IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAUN ZOKAIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| KING SUPPLY COMPANY, LLC, d/b/a | § | |
| KING ARCHITECTURAL METALS, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Shaun Zokaie ("Plaintiff" or "Zokaie") hereby files this Original Complaint against Defendant King Architectural Metals, d/b/a King Supply Company, LLC ("Defendant" or "KAM") for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

### I.     PARTIES, JURISDICTION, AND VENUE

1.     Zokaie is currently a citizen and resident of Dallas County, Texas.

2.     KAM is a domestic company, with its main place of business being in Dallas, Texas. KAM may be served through its registered agent for service, Stewart E. King, 9611 East R.L. Thornton Freeway, Dallas, TX 75228.

3.     The Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 & 1343. Venue exists in this district and division as detailed in 28 U.S.C. § 1391.

## II. FACTUAL BACKGROUND

4. Zokaie worked as a Graphic Designer for KAM, working out of KAM's facility in Dallas, Texas.

5. During the time Zokaie was employed by KAM, he was subjected to sexual harassment on numerous occasions at work by his supervisor, Larry Robertson ("Robertson"). This sexual harassment by Robertson included, but was not limited to, the following:

- Robertson sexually molesting Zokaie by touching his buttocks and attempting to kiss him;
- Direct sexual overtures by Robertson on a regular basis, including, but not limited to:
    - Telling Zokaie he would like to fu*k him;
    - Calling Zokaie "honey," "sweetie," and his "little work slut";
    - Describing in detail sexual acts he wanted to perform on Zokaie;
    - Asking Zokaie to sit on his lap, or get under his desk;
    - Saying that he wanted to "turn him gay" and that he was missing out;
    - Throwing items on the floor and asking Zokaie to bend over to pick them up;
    - Commenting on how Zokaie's buttocks looked in his pants; and
    - Explaining that he would "fu*k" Zokaie if he lost some weight.
- Daily comments by Robertson about sexual acts he engaged in with others, descriptions of his penis, talking about wanting to have sexual relations with other men working for KAM, (calling them his "work boyfriends"), and bragging about how he was able to get away with sexual touching of females at work because he was gay.

6. KAM was aware of Robertson's sexual harassment of Zokaie—and other employees—as Robertson openly made these comments and did these acts in front of other KAM management and Human Resources employees. When Zokaie complained about it, he was told that it was "just Larry being Larry."

7. Zokaie would constantly ask Robertson to stop the sexual comments and overtures, but to no avail. The message finally got through to Robertson when Zokaie told Robertson he no longer wanted to even be around him at lunch because of his sexual behavior towards him, and he made it clear that he would never engage in any sexual relations with him. Thereafter Robertson started to treat Zokaie with disdain and hostility, including ostracizing him, unfairly criticizing him, complaining about him to staff, refusing to communicate with him on vital projects, and giving him an unfair negative performance review, (which disqualified Zokaie from participation in the employee bonus program). It was clear that—once Zokaie refused Robertson's advances—he was looking for reasons to get rid of Zokaie.

8. Zokaie went to the Director of Human Resources, Patricia Cortez ("Cortez"), to discuss the harassment and retaliation he was enduring for refusing Robertson's advances. Cortez told Zokaie that she could file a report on his behalf, but that it would probably lead to Zokaie being terminated, and she advised Zokaie that he should probably just find a job elsewhere.

9. Within a day or so of Zokaie meeting with Cortez in Human Resources, Cortez contacted Zokaie on his cell phone. Cortez said she got his phone number from his personnel file, and she was "checking to see if [he was] okay." Because of all the stress perpetrated by Robertson at work, Zokaie was in a very bad place emotionally, and he accepted the friendship being offered from Cortez. They started to text, and she even asked him to go to lunch, which he accepted. Thereafter Cortez started making sexual advances towards Zokaie, and although he initially refused these advances, he ultimately succumbed to her. As a result of Zokaie's acquiescence to Cortez's sexual requests, Cortez informed Zokaie that he need not worry about his job being in jeopardy as she would protect him from Robertson's retaliatory actions.

10. Zokaie's job seemed secure as long as he continued in his sexual relationship with Cortez, but when he told her that he no longer wanted to engage in sexual relations with her, she immediately became hostile towards him. When Zokaie told her about the continuing retaliation by Robertson, she merely told him he should find a job elsewhere. When Zokaie continued to persist that a formal complaint be filed, Cortez stated, "Look, I can file it for you, but I promise you Larry will find out and will use it as an excuse to get rid of you. You should just look for another job. Plus, I don't want to deal with any of that mess with you and Larry."

11. In response Zokaie did everything he could to prevent Robertson and Cortez from finding an excuse to terminate him, working long hours, and doing everything he could to meet all the unreasonable deadlines placed on him by Robertson. Because of all this extra work, it was hard for Robertson to find an opening for termination, and it seemed as though Robertson was starting to ease up on his hostility towards Zokaie, giving him a positive performance review and bonus. However, a few weeks after getting this positive feedback, Robertson found out that Zokaie was complaining to Human Resources about sexual harassment and retaliation, and KAM terminated Zokaie on July 31, 2014—with no reason given to Zokaie for the termination.

12. It is believed two (2) different reasons were given to the Texas Workforce Commission by KAM for the termination, one being that Zokaie was laid off, and the other alleged reason being Zokaie had a negative attitude. Both of these reasons fail because Zokaie was replaced by someone else after his termination, and he had just received accolades from KAM just a few weeks before this termination. It is clear that these reasons were mere pretext, and that Zokaie was terminated because he refused to engage in sexual relations with Robertson and/or Cortez, and because he made complaints of sexual harassment and illegal retaliation in violation of Title VII.

13. Zokaie filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on or about September 5, 2014. This Charge alleged sexual harassment and illegal retaliation. The parties attempted to negotiate a resolution of the matter with the EEOC in September of 2022, but they were unable to resolve the matter. Zokaie received the Notice of Right to Sue from the EEOC on or about September 29, 2022.

### III.   CAUSE OF ACTION—VIOLATION OF TITLE VII

14. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 13 as if fully stated herein.

15. Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under Title VII.

16. Plaintiff's sexual harassment and illegal retaliation claims are brought under the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e *et. seq.* ("Title VII"), and are being commenced within the required statutory time limits of Title VII, in that (a) the charge was filed within three hundred (300) days of the harassment/discrimination/termination, and (b) this lawsuit is being filed within ninety (90) days of receiving the Notice of Right to Sue issued by the EEOC.

17. Defendant is defined as an "employer" by Title VII.

18. Plaintiff is an "employee" as defined by Title VII.

19. As discussed above, during the time that Plaintiff was employed by Defendant, he was subjected to illegal sexual harassment, (including quid-pro-quo sexual harassment), and this sexually-hostile work environment affected the terms and conditions of Plaintiff's employment.

20. Plaintiff was also subjected to retaliation by Defendant for engaging in protected activity as defined by Title VII, which affected the terms and conditions of Plaintiff's employment, and ultimately led to Plaintiff being terminated.

21. Defendant did not have adequate policies or procedures in place to address the sexual harassment and retaliation, nor did it implement prompt remedial measures.

22. As described above, Defendant intentionally and willfully violated Title VII by allowing the sexual harassment, and thereafter retaliating against Plaintiff for complaining about, and reporting, the sexual harassment.

23. In sexually harassing and illegally retaliating against Plaintiff, Defendant acted with malice and/or reckless indifference to the statutory-protected rights of Plaintiff.

24. As a result of Defendant's willful violations of Title VII, Plaintiff has suffered mental trauma, actual damages in the form of lost wages and benefits (past and future), and other losses.

### IV.   JURY DEMAND

Plaintiff requests a trial by jury on all claims.

## V.     PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff obtain judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages and benefits, (both past and future), the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory damages in the maximum amount allowed by law, (including mental anguish and loss of enjoyment of life);

c. Judgment against Defendant for punitive damages in the maximum amount allowed under law;

d. An order that Defendant take such other and further actions as may be necessary to redress its violation of the law;

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, including attorneys' fees; and

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Robert (Bobby) Lee*
**Robert (Bobby) Lee**
State Bar No. 00787888
lee@clousebrown.com

CLOUSE BROWN PLLC
1201 Elm Street, Suite 5250
Dallas, TX 75270
Telephone: (214) 698-5100
Facsimile:  (214) 481-8881

**ATTORNEY FOR PLAINTIFF**